R. Douglas Ball v. Commissioner. Frances P. Ball v. Commissioner.
Ball v. Commissioner
Docket Nos. 4331, 4332.
United States Tax Court
1945 Tax Ct. Memo LEXIS 208; 4 T.C.M. (CCH) 467; T.C.M. (RIA) 45162; May 3, 1945
E. L. Skeel, Esq., 914 Insurance Bldg., Seattle, Wash., for the petitioners. Douglas L. Barnes, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: These consolidated cases involve deficiencies in income tax in the approximate amount of $5,025.63 for each petitioner ($5,025.64 for R. Douglas Ball) for the calendar year 1941. The principal issue is whether the respondent erred in holding that liquidating dividends paid by a corporation to petitioners were amounts distributed in complete liquidation of the corporation in accordance with a bona fide plan of liquidation under which the transfer *209 of the property under the liquidation was to be completed within a time specified in the plan, as provided in section 115 (c) I.R.C. A minor issue involves the disallowance of a bad debt deduction in the amount of $1,450, one-half of which was claimed by each petitioner. Many of the facts have been stipulated and are found to be as shown in the stipulation. Other facts shown in the findings are based upon evidence adduced at the trial. Findings of Fact The petitioners, husband and wife, residing in Seattle, Washington, filed separate returns of income for the calendar year 1941, on a cash basis, with the collector of internal revenue for the Washington district. Each reported one half of the income of the community. The petitioners were the owners of the shares of stock of National Discount Corporation, which had been owned and held by them for several years prior to the taxable year. The company was engaged principally in financing individuals in business enterprises. In 1940 Ball and Richard F. Deane who, subject to supervision by Ball, was the active officer in charge of the operations of the corporation, had some conferences with an accountant who *210 advised them and the corporation on tax matters. Conclusion was reached that the corporation should be dissolved. The accountant advised that the tax liability of the stockholders would be minimized if the company should be liquidated within a two year period and in accordance with a plan. It was determined that this could be accomplished because of the liquid nature of the assets and that it would be done. Under date of March 26, 1941, it was decided at stockholders' and directors' meetings that the affairs of the corporation be wound up out of court, as provided by statute in the State of Washington, and that the corporation be dissolved. The Washington statutes prescribe two methods for liquidation of a corporation, one by a court through a trustee, and the other, most generally used, through the adoption of a resolution authorizing dissolution and the appointment of a trustee. Under the latter plan the resolution is required to be filed in the office of the auditor of the county in which the corporation has its registered office and a copy is required to be filed for record in the office of the Secretary of State. The trustee then takes over the affairs of the corporation and *211 winds it up. The resolution passed by the stockholders and directors on March 26, 1941, was as follows: "* * * the affairs of National Discount Corporation shall be wound up out of court and liquidated and there is hereby elected R. F. Deane as trustee of the affairs and assets for the purpose of liquidating the property thereof and distributing the funds received from the assets of National Discount Corporation, proportionately to the stockholders * * *." The minutes do not show any other corporate action with reference to the liquidation and dissolution of the corporation. Copies of the above resolution were duly filed in the office of the auditor and Secretary of State as required by the Washington law. The designated trustee immediately commenced to liquidate the assets of the corporation and to convert into cash all outstanding loans. From the funds received from the liquidation of the assets he made proportional payments to the stockholders on the following dates: May 3, 1941
December 26, 1941
May 17, 1941
January 29, 1942
June 17, 1941
February 24, 1942
July 24, 1941
June 8, 1942
September 5, 1941
August 25, 1942
October 14, 1941
December 22, 1942
November 4, 1941
*212 The liquidation and dissolution of the corporation was carried out in conformity with the statutes of the State of Washington and the final distribution, which was made on December 22, 1942, completed the liquidation. Under date of December 26, 1942, the trustee filed with the Secretary of State of the State of Washington his final certificate of dissolution of National Discount Corporation. The total amount received by petitioners in liquidation of the corporation was $48,960. The basis of their stock was $22,121.85 and the total gain $26,838.15. In the returns of the petitioners for the taxable year fifty percent of the gain, or $13,419.07, was reported as the gain of the community upon the liquidation of the corporation. The Commissioner added the other fifty percent of the gain realized to the income of the petitioners, one half being added to the income of each. Opinion In the instant case respondent makes substantially the same contentions as were made in John R. Roach, 4 T.C. 1255 (promulgated April 30, 1945). Briefly it is, that, under section 115 (c) I.R.C., the "bona fide plan of liquidation * * * under which the transfer of the *213 property under the liquidation is to be completed within a time specified in the plan * * *" presupposes, or inferentially requires, that the plan be fully disclosed in corporate resolutions. He states that no mere oral instruction or understanding among the individual stockholders is sufficient to express the corporate plan. In John R. Roach, supra, it was recognized that formal corporate resolutions may not set forth with completeness the plan for liquidating a corporation. It was there held that acts of the directors and stockholders might be considered to dispel any doubt as to whether the corporate resolutions provide for immediate liquidation, and, where the testimony clearly showed that the plan in fact required that the liquidation be carried out immediately and within the time specified, failure to incorporate all the details of the plan in the corporate resolutions was not fatal. In the instant case the testimony of the principal stockholder, Ball, the testimony of Deane, the liquidating trustee, and the testimony of the accountant clearly indicate that all of the parties were conscious of the fact that the liquidation must be taken in accordance with a definite *214 plan and that it must be consummated within a two year period. Deane was given specific instructions to act in accordance with such plan and did so. Under the circumstances, therefore, and on authority of John R. Roach, supra, and the cases therein cited, the first issue is resolved in favor of the petitioners. Findings of Fact Between January 13, 1933, and August 19, 1933, Ball loaned to N. D. Hoppenstand the sum of $1,944.41 in a series of advances made in connection with financing and developing an invention of Hoppenstand's for "pocket check protectors." The borrower executed a chattel mortgage to Ball upon his office equipment and agreed to apply all money received from the sale of the check protectors on the indebtedness. Between April 29, 1933, and June 20, 1933, $218.50 was paid upon the indebtedness. The debtor left Seattle during the year 1933 and did not thereafter communicate with Ball nor specifically admit any liability for the money owed by him. After the debtor left Seattle petitioner sold substantially all of the assets covered by the chattel mortgage, except some 5,000 or 6,000 of the pocket check protectors, realizing from the sale $201.01. Subsequent *215 to the year 1933 the check protectors had little value. During the year 1941 petitioner sold the check protectors for $75. The balance of the debt at that time was approximately $1,525. (The difference between the amount loaned and the payments shown above was $1,521.90). In petitioners' returns for the taxable year each deducted one half of $1,450, or $725, as a bad debt. These deductions were disallowed by the Commissioner. The indebtedness of Hoppenstand to petitioners did not become worthless during the taxable year. Opinion The last finding which has been made is determinative of the issue. We have concluded upon consideration of all of the evidence that the Hoppenstand indebtedness did not, in the language of the applicable statute ( section 23 I.R.C., as amended by section 124 of the Revenue Act of 1942, made retroactively effective to the taxable year) "become worthless within the taxable year." There are many circumstances supporting this conclusion. Ball testified that after Hoppenstand disappeared he and the landlord of the building in which Hoppenstand's furniture was located sold the furniture and applied it on Hoppenstand's debt to the *216 landlord and to Ball. He also stated that the sale of the furniture had been delayed because he "wanted to be charitable" and "finally when it came to the point I figured he would not return and I would never get the money, at that time I sold * * * [the furniture]." He did not thereafter hear directly from Hoppenstand. "On several occasions we did hear where he had jumped his hotel bill * * *." No action was taken to enforce collection (except to sell the furniture) until 1941. Finally, in that year, petitioners located the debtor in Pittsburgh and learned that he was then judgment proof. Thereupon the check protectors were sold for a nominal sum and the balance of the indebtedness was charged off, petitioners apparently acting upon the assumption that they had thereby ascertained the indebtedness to be worthless and charged it off as the statute then provided. The subsequent amendment of the statute, however, makes it incumbent upon petitioners to establish that the indebtedness became worthless during the taxable year. They have failed to make such proof. The disallowance of the claimed deductions is therefore approved. Decision will be entered under Rule 50.